# William Henry Kime et al., Plffs. in Err., *v.* Thomas B. Polen et Ux., in Right of Wife.

In ejectment by Polen against Kime for a lot of ground, both claimed under Tripp, who in 1852 was the owner of a tract including the lot in question.    In 1858 the tract was sold at sheriff's sale, on a judgment against Tripp, to Sharps, who conveyed to Shoemaker.    In 1873 Shoemaker conveyed to Polen.    Kime was in possession claiming by a defective paper title, and by adverse possession.    Kime's fence in 1873 included part of the lot and he alleged it had stood in the same place since 1860, but the evidence was indefinite.    Shoemaker's title to the lot was clear and his deed to Polen, mentioning other adjoiners besides Kime's line as well as the amount of land conveyed, indicated an intention to convey the lot to Polen without regard to Kime's fence.    The court below left the question of Shoemaker's intention to the jury.—*Held,* affirming judgment on a verdict for Polen, that the question was merely one of lines and that the justice of Polen's claim was plain from the deeds, which need not have been submitted to the jury.

(Argued February 22, 1887.   Decided March 14, 1887.)

January Term, 1887, No. 37, E. D., before GORDON, PAXSON, TRUNKEY, STERRETT, and CLARK, JJ.    Error to the Common Pleas of Lackawanna County to review a judgment on a verdict for the plaintiffs in an action of ejectment.    Affirmed.

The facts as they appeared at the trial before ARCHBALD, J., were stated in his charge to the jury, which was as follows:

I ask that you pay particular attention to the charge that I now shall deliver to you, not because the case possesses greater importance than any other case,—it is of sufficient importance to merit your attention in any event,—but because I think possibly the true issue, in your minds, may have been lost sight of in considering and hearing evidence upon matters that only indirectly affect that issue.

A great deal of evidence has been directed to the question of where the fence of the Kimes was in 1873, or prior to that. [Now, it may be that you will find, as the defendants contend and as is sustained by perhaps the greater part of the evidence, that there was a fence at the brow of the hill as early as 1860 or 1861, and that it was continued a long time, and that it stood in the same position in 1873.    But even if that fact

be established, it still does not entitle the defendants to your verdict, as I shall explain to you.] It is a circumstance to which I shall call your attention in due course, but I state this in the beginning, because too much has been said back and forth and so much evidence directed to the location of that fence, and its establishment as early as 1873.

This action brought by Mr. and Mrs. Polen (Mrs. Polen being the owner in whom the title now is, or is supposed to be) to recover possession of a piece of land such as is described in the writ, "bounded on the north by land formerly used for a burying ground," that would be up the valley, "and now a common," the boundary on that side is spoken of as "a common," "on the easterly side," that is the side down the hill, or towards Scranton from Hyde park, "by land used for a burying ground, and by land supposed to belong to one or both of the defendants and now or lately to one Alsworth; on the southerly side by Price street," that is on the side down the valley, "formerly Franklin street; and on the westerly side," that is up the hill, "by a street called or known as Fairview avenue; said described lot being about 60 feet in front on said Fairview avenue and about the same in the rear, and about 38 feet in depth."

[There is sufficient evidence to submit to you, as to the identity of the land described in this writ, which I have now read, and the land in dispute between these parties. There is very little doubt in regard to what land is in dispute between the plaintiffs and the defendants. It is a question for you, whether the description in this writ corresponds with and is identical with the land which has been discussed and shown to be in dispute between the parties. The sheriff has made a return which has not been disputed, and according to law that return is evidence that the defendants are in possession of the land which is described in the writ. In my mind there can be very little question but what there is a sufficient identification of the land described in the writ, with the land which is in dispute between the parties.]

Now, this land being in the possession of the defendants, the plaintiffs, in order to recover, must show that for some reason they are entitled to that possession. If they are the owners in law of the land in dispute, and have shown a title to it, then the law always gives a party the possession of land to which he

has shown a title. So the first question for us to direct our attention to is the title of the plaintiffs to this land.

[The defendants' show of title and the plaintiffs' disclose to us a common source of title, as it is called.] It appears by the evidence, that Mr. Benjamin S. Tripp, this old gentleman, who has been on the witness stand here, owned the whole of the land, reaching from what is now Wyoming avenue or Ninth street from the border of the Fellows estate up the hill, covering this whole tract in dispute, and extending up to Main street, as I remember the testimony, embracing 9 acres in all. We may start then from that point, with the ownership of the whole land covering this piece in dispute from Wyoming street away up to Main avenue. That circumstance is important, and gives us the basis of the consideration of the plaintiffs' title, and the respective rights of the plaintiffs and the defendants.

Now, from that common source, although the defendants' title really starts from Mr. Tripp before the plaintiffs' title, I will trace the plaintiffs' title down first.

On the 15th day of July, 1858, Mr. Tripp then being the owner of the whole tract, as I have stated it to you under the evidence, a judgment was entered against him in Luzerne county; and on the 12th of April, 1862, upon that judgment a sheriff's sale was had, and a sale made to Stephen J. Sharps. The sheriff, subsequently, on the 23d of April, 1862, executed, acknowledged, and delivered to him a deed for this land.

I will read the description in that deed. "Commencing at a corner on Chestnut street" (that street, as you will remember the evidence, is up on the hill parallel to Fairview avenue, which is just on the brow of the hill—that is, Chestnut street is westerly then, under the evidence, from Fairview avenue.) "Commencing at the corner of Chestnut street, in line of land belonging to the Baptist Church and running thence in an easterly direction along the line of land of said Baptist Church, lands of Timothy and John Gardner and lands supposed to belong to the burying ground 255 feet, more or less, to a corner."

That would be, as I understand it, starting at Chestnut street and running easterly in a direction which would cross Fairview avenue and come down the hill 255 feet, more or less, to a corner; "thence in a southerly direction" (or down the valley, a course at right angles from the other line) along said burying ground and the rear end of other land in possession of Timothy

and John Gardner and land of David J. Davis 160 feet, more or less, to a corner; "thence in a westerly direction" (turning up the hill again), "along the line of land of said Tripp and the rear end of lot owned by William Silkman and land of Timothy and John Gardner, 255 feet, more or less, to said Chestnut street; thence north (turning up along Chestnut street), about 150 feet, more or less, to the place of beginning."

You will notice that the easterly boundary of the land levied upon and sold and conveyed by this sheriff's deed is the tract of Timothy and John Gardner, among others, bounded by the burying ground and by David J. Davis, and also by the land of Timothy and John Gardner.

This sheriff's deed on the 24th day of March, 1868, was assigned by Mr. Sharps to William S. Shoemaker; then, on the 10th of December, 1873, William S. Shoemaker conveyed to Mr. Polen, subsequently Mr. Polen conveyed to William Jacobs, who conveyed back to Mrs. Nellie C. Polen.

That is the claim of the title that the plaintiffs make to this land in dispute.

The defendants' title, starting from the common source, Mr. Tripp, with the plaintiffs' title, appears by the recitals in the deed of Timothy Gardner to John Gardner, to have originated from Mr. Tripp in a contract on the 1st of November, 1853. Mr. Tripp at that date contracted to sell to Judson M. Clark. Subsequently a sheriff's sale was had of Mr. Clark's interest, and Mr. William Sweatland became the purchaser. A deed by the sheriff was delivered to him on the 11th of May, 1859, and on the 30th of September, 1859, Mr. Sweatland, on the back of the sheriff's deed, assigned his interest under the sheriff's sale to Timothy and John Gardner.

Timothy Gardner on the 1st of August, 1865, deeded his interest in the land to John Gardner. I will read the description in that deed:

"Bounded as follows: northerly by what is called the Fellows burying ground," that would be on that (the right) side; "easterly by land formerly in the occupancy of Sylvanus Fellows, now Wyoming avenue; southerly by land of Benjamin S. Tripp" (that is down the valley), "now belonging to David J. Davis; and westerly by other lands late belonging to said Tripp, the same being 50 feet in width on said Wyoming avenue and running back from the center of said Wyoming avenue said

width 150 feet; coal and minerals with the right to mine and remove the same reserved."

This deed, from Timothy Gardner to John Gardner, by its recitals is shown to be the same land that was contracted in 1853 by Benjamin S. Tripp to Judson M. Clark; that is, in 1853 Mr. Tripp, under the evidence, being the owner of the whole tract of land, contracted to sell to Judson M. Clark a piece of land 50 feet wide, running from the center of Wyoming avenue up the hill 150 feet.

It is fixed by the evidence that Wyoming avenue was contributed and dedicated to the public by Mr. Tripp, on the one side, and Mr. Fellows on the other; that the line between Tripp and the Fellows estate goes through the center of that street. That will explain why, possibly, in this description the center of the street is taken as the beginning of the 150 feet which runs up the hill.

Now the title of Timothy and John Gardner to this land, vested subsequently, as I shall explain to you, in Anna M. Kime and William Henry Kime, two of the defendants.

[You will notice that in 1853, when the title started, Mr. Tripp had the rest of the land still. It was not until the sheriff's sale in 1862, nine years after, that the title, which is now claimed to be vested in the plaintiffs, passed from Mr. Tripp by the sheriff's sale. The effect of this, then, was to leave in Mr. Tripp the balance of the land, and the balance of that land having been levied upon by the sheriff subsequently and sold by him and conveyed to Sharps, and Sharps having assigned to Shoemaker, the title was vested in Shoemaker of the whole of the balance of the land, down to the Gardner line, down to a point 150 feet from the center of Wyoming avenue.]

Now, on the 30th of December, 1872, John Gardner and his wife, who were the owners of this Kime lot at that time, contracted to sell to Dr. W. H. Heath; subsequently Dr. Heath assigned his interest under that contract to Anna M. Kime and William Henry Kime, so that their title is derived under this contract from John Gardner to Dr. Heath and the Gardner title is derived under this contract from Benjamin S. Tripp to Judson M. Clark.

The description in this contract to Dr. Heath reads as follows: "Beginning at the corner on the line of the People's Street Railway and running thence along the line of land for-

merly owned by Benjamin S. Tripp and the line of the old cemetery north 51 degrees, west 150 feet, be the same more or less, to the top of the hill, to line of land now or formerly owned by William S. Shoemaker."

[The mistake in that description is evident to you from the diagram which has been put in evidence—the street railway being here much farther up than the center of Ninth street or Wyoming avenue. Beginning 150 feet from the street railway would run it up the hill, but counting from the middle of Wyoming avenue 150 feet, up the hill, it draws the rear end of the Heath or Kime lot, or Gardner lot, much farther down the hill, being down here (pointing to the map) instead of at the top of the hill.]

You will notice that this description also runs up to the land of Shoemaker and would be bounded, of course, by the point where Shoemaker's land begins. The fact that under that there was less land than Gardner could deliver or contract to sell to Dr. Heath cannot affect the plaintiff's title to the land, beginning at a point here in the rear of what is claimed to be the true rear line of the Kime lot and extending the balance of the way; the plaintiffs are not answerable for a mistake made in that description.

Mr. Gardner could not contract to sell what he did not have title to; he might have contracted to sell 250 feet, or 500 feet; but a mere contract to sell that amount would not give any title unless he had it.

[The mistake made in this contract—and it is an evident mistake—probably is the starting of this whole controversy. Limiting then this contract to the title which Gardner had and which alone he was able to contract to sell, it covers and shows title to no part of the land in dispute.]

Now, however, I must call your attention to this fact, that the right of a plaintiff to recover in an action of ejectment does not depend upon the weakness of his adversary's title to the land. The plaintiff must recover upon the strength of his own title. If I am in possession of land, then I have the right to retain that possession against everybody who cannot show a proper title to it. Provided, always, I have not intruded without any color of right upon the possession of another person.

[So, the question is really brought down to this: The defendants showing no title to the land in dispute, have the plaintiffs

shown a title to this land? There is no doubt that the title to the land in dispute was fully vested in William S. Shoemaker, so that the whole question turns upon the Shoemaker deed. Did the deed from Wm. S. Shoemaker to Mr. Polen, in 1873, convey title to the land in dispute? That is, did it embrace within its description the land in dispute? If it did, then the plaintiffs are entitled to recover. If it did not, then the plaintiffs are not entitled to recover.]

I will read the description: "Beginning at a corner on the easterly side of Franklin street 140 feet from Chestnut street; thence in an easterly direction 60 feet to land of the Baptist Church; thence in a southerly direction along the land of the Baptist Church, Sperry, and lands supposed to belong to the burying ground, about 140 feet, more or less; thence in a south-westerly direction along said burying ground and the rear end of land now in the possession of Kime and Alsworth 60 feet; thence in a northerly direction along the east side of said Franklin street about 140 feet to the place of beginning. Excepting and reserving 20 feet in width across said lot for road or street, called High street, containing about 7,200 square feet, more or less, it being lots numbers 8 and 10 and 10 feet off of the southerly part of lot No. 6. Excepting and reserving all the coal and other minerals."

Something has been said in the argument and your attention has been called in the evidence, to the fact that Mr. Shoemaker, if the position taken by the plaintiffs in this is correct, would have a greater number of feet in length in his whole tract than his deed called for. That does not make any difference. As I have explained to you, the balance that was left to Mr. Benjamin S. Tripp, after he had contracted to sell to Judson M. Clark the whole balance of the tract from the end of the Gardner lot up to Main street, was sold out at sheriff's sale, and the title, as far at least as Chestnut street (I am not familiar enough to say whether farther or not), was vested fully in William S. Shoemaker.

Now then, the description in the deed to Polen begins at a point fixed on the easterly side of Franklin street distant 140 feet from Chestnut street, and beginning at that point on Franklin street it runs thence in an easterly direction; that would be running in a direction parallel with Fairview avenue 60 feet; that would be across the lot to the land of the Baptist Church;

thence running in a southerly direction along lands of the Baptist Church and Sperry and land supposed to belong to the burying ground 140 feet, more or less; thence in a southwesterly direction along said burying ground and the rear end of land now in possession of Kime and Alsworth 60 feet; that is, [the 140 feet, beginning at the point fixed in this deed, is to be carried its full extent, unless there is something else in the deed to limit it and stop it before the full 140 feet are reached, provided, of course, Mr. Shoemaker had title to that full 140 feet and we have seen that he did have it.]

Now, is there anything in this deed, or in the circumstances in the case, that shows that that whole 140 feet is not to be allowed to Mr. Polen under this deed? If there is, then he must stop short at the point the deed fixes less than 140 feet; that is what we must do under this description in the deed and the evidence in the case. If not, then he is entitled to go the full 140 feet, beginning where he does.

Now, the boundary on the southerly, as it is here called, or, as we have been talking of it, the easterly side of this tract of land conveyed to Mr. Polen, is fixed by the rear end of land now in the possession of Kime and Alsworth and the burying ground; that is three abutters, as we call it, three adjoiners—three pieces of land are spoken of as the boundary on the easterly or southerly side of the Polen lot; land in the possession of Alsworth, the burying ground, and land in the possession of Kime:

[We have, then, as the boundary on the rear of the Alsworth lot, the rear of which is not defined, the land in the possession of Kime, and the burying ground.

Not only are these dimensions and these boundaries given in the deed, but we also have a statement in it of the amount of square feet that was supposed to be in the land covered by this description, that is, 7,200 square feet, more or less. Now, if you take a tract of 60 feet by 140 feet and allow for the 20 feet of road way that is reserved out of it, you will find that it comes to 7,200 feet.

There is in this a circumstance which you are to weigh, in considering whether the intent of this deed is to give to Mr. Polen the full 140 feet. Of course the title to the land in dispute is not in Kime; it is either in Mr. Shoemaker, or it is in Mr. Polen.

Did, then, Mr. Shoemaker by this deed intend to deed all that he had there down to the line of Kime? Or did he intend to keep in himself the narrow piece there on the brow of the hill just where it falls over, and a rocky piece of ground at that, without particular value, as has been said here by some of the witnesses? That is the question for you to determine.

The position of Kime's fence in 1873, compared with its position now, as bearing upon the claim of the plaintiffs of title to land in dispute, is only of importance in guiding us to what was the intent of Mr. Shoemaker when he made this deed.

With proper caution Mr. Shoemaker has given a description which does not compel him to warrant the title to the land in dispute. That is, he only conveyed down to a point where Kime could establish title and right of possession under this deed. Unless it is shown that Mr. Shoemaker intended to retain title in himself to the small strip of land there, the land that is in dispute, then this deed conveyed title to that land to Mr. Polen.

It seems to me clear, from all the circumstances put in evidence in this case, which, of course, you are to pass upon, that Mr. Shoemaker by his deed did intend to convey all the land he had down to the true line of Kime's lot; that is, to that boundary of Kime's lot which alone he could rightfully claim possession to, and that Mr. Shoemaker did not intend to limit the conveyance simply to the position of Kime's fence as it was in 1873.

If you are satisfied from the evidence of this, then the deed does not confine the plaintiffs to that line, that fence line as fixed in 1873, or prior to that, but is sufficient to cover the land in dispute and to show the title perfect in the plaintiffs to it; and if you so find, then the plaintiffs are entitled to your verdict; on the contrary, if you find from all the circumstances in the case, under such explanations and instructions as I have given you in regard to them, that it was not the intent of Mr. Shoemaker, by this description, to cover the land in dispute, but that he intended to reserve to himself title in that,—that is, that the description excludes the land in dispute,—then the plaintiffs are not entitled to recover, and your verdict should be for the defendants.]

I will now read the points which have been submitted. I will first read the defendants' points:

1. "If the jury find from the evidence that the description

of the boundary line between the plaintiffs and the defendants is described in the deed from Wm. S. Shoemaker and wife to Thomas B. Polen, dated December 10, 1873, as follows: Thence in a southwesterly direction along said burying ground and the rear end of lands now in possession of Kime and Alsworth, 60 feet, and that this is the boundary line of the land conveyed to the plaintiffs, and that at and before the said 10th of December, 1873, the land in dispute was in possession of Kime and Alsworth, the verdict should be for the defendants "

*Ans.* I cannot affirm this point.

2. "A call for adjoiners will prevail over a designation of courses and distances and, they must govern though neither courses, distances, nor contents correspond."

*Ans.* This is true as a general proposition of law, and I affirm it. Of course it is qualified by what I have already instructed you.

The plaintiffs' points are as follows: . . .

2. "The possession of the defendants of the land in dispute is no defense to this action, unless continued in for thirty years and unless it was actual, visible, notorious, distinct, hostile, continued, and exclusive."

*Ans.* If the plaintiffs have shown title to the land, as I have instructed you, that is, legal paper title, as it is called, then a claim of title by possession, if made on the part of the defendants, would have to be such as described in this point. I do not understand, however, that the defendants make any show of title by possession, as it is called.

A juror: "Please notice that second point again."

The Court, resuming: Possession must be continued in for twenty-one years: it must be adverse, hostile, continuous, open, and notorious, in order to give title to land. There has been no showing of such possession on either side; so that I do not think this point is important, or that it illustrates in any way the issues here.

The real question, as I have explained to you, is whether Mr. Polen's deed covers the land in dispute. The defendants may have had possession of it for ten years or fifteen years; I do not know how long, but they have not shown continuous, adverse possession, such as would give them title. There is no evidence to submit to you on that point, and you should dispel it from your minds. They have no claim by virtue of possession, except

the claim which a defendant always has, that he has the right to retain his present possession, however it may be obtained, unless the plaintiff has shown a legal title to the land. . . .

4. "Under the Sharps deed and the assignment, Mr. Shoemaker took title to all land down to the rear end or line of the Gardner lot, although it was more than 255 feet."

*Ans.* This is affirmed. That is just as I have endeavored to explain to you. . . .

8. "The jury must find for the plaintiffs for some of the land described in the writ under any circumstances."

*Ans.* That is, there is a part of the land as claimed by the plaintiffs, to which they are entitled, that Kime does not lay claim to, running from the edge of Fairview avenue down to the point where Kime's lot is, a little strip there, some 15 or 20 feet wide; the evidence will show what it is.

Now, gentlemen, in regard to that, I think the point as stated is correct, and that your verdict, in any event, would have to be for that small piece of land on the edge of Fairview avenue and the line of Kime's fence as it was in 1873.

Under the instructions that I have given you, however, if you find the intention of the Shoemaker deed was as I have explained, and the description in it applies to all the land down to the rear of where the Kime lot should end, then, of course, your verdict would be for the plaintiffs for the whole of the land described in the writ. If you find only for part, you will mark off what part you find for, describing it. If, however, you are satisfied from the deed and from the other circumstances in the case and from the instructions which I have given you, that the plaintiffs have not shown a title to that part of the land lying between where Kime's fence is now, or was in 1873, down to a point where Mr. Shoemaker's title would end to that tract, and the title to the Gardner lot begins, then your verdict should be for the defendants.

Verdict and judgment were for the plaintiffs.

The assignments of error specified the portions of the charge inclosed in brackets; the answers to the points quoted; and that the charge as a whole tended to mislead the jury.

*Lemuel Amerman* and *F. W. Gunster,* for plaintiffs in error.
—The sheriff's deed to Sharps calls for only 255 feet from

Chestnut street and then calls for land "in the possession of Timothy and John Gardner" in the rear, and the deed from Shoemaker to Polen calls for "land in the possession of Kime" in the rear.

The courses and distances in the deed must yield to the marks and monuments made upon the ground. Willis v. Swartz, 28 Pa. 413; Ogden v. Porterfield, 34 Pa. 191; Cox v. Couch, 8 Pa. 147; Lodge v. Barnett, 46 Pa. 477.

The quantity of land which passes by a sheriff's sale, to the purchaser, is to be ascertained by the extent of the levy.

The right of construing the written return of the sheriff generally belongs to the court; and the *quantum* of estate conveyed by a sheriff's deed is usually referable to the court alone; but when, from the generality of the terms used, or from uncertainty of description, a doubt is raised as to the boundaries of the levy or the position or limits of the land sold, evidence *aliunde* may be resorted to; and where such evidence is received, it is error for the court to direct peremptorily how the verdict is to be rendered. Hoffman v. Danner, 14 Pa. 25.

The question is what limits the officer had in his eye at the time of the levy, and what proportion of the land he actually levied on. If he took less than in fact belonged to the defendant in the execution, just so much passed, and no more. Hoffman v. Danner, 14 Pa. 25, 30.

What property is embraced in a levy which is obscure in its terms may be shown by parol evidence; and it is a matter of fact to be determined by a jury. Scott v. Sheakly, 3 Watts, 50.

A tendency to mislead in the general tenor of the charge, although no particular portion is erroneous, is sufficient ground for a new trial or for reversal. Reeves v. Delaware, L. & W. R. Co. 30 Pa. 454, 72 Am. Dec. 713; Pistorius v. Com. 84 Pa. 158; Bisbing v. Third Nat. Bank, 93 Pa. 80, 39 Am. Rep. 726; Leibig v. Steiner, 94 Pa. 472; Washington Mut. F. Ins. Co. v. Rosenberger, 3 W. N. C. 16; Pennsylvania R. Co. v. Berry, 68 Pa. 278; O'Hara v. Richardson, 46 Pa. 387; Hilliard, New Trials, 513; Goersen v. Com. 99 Pa. 401.

While a judge has a right to express an opinion upon the evidence, he must not infringe on the province of the jury so as to relieve them from pronouncing an intelligent judgment for themselves—he must not mislead them or control their deliberations. Mohney v. Evans, 51 Pa. 84; Leibig v. Steiner, 94 Pa. 472.

*Thomas F. Wells,* for defendants in error.—The court left it to the jury to say whether the land was sufficiently described in the writ; and the jury found that it was. The court also told the jury that there was sufficient evidence to submit to them, as to the identity of the land described in the writ with the land in dispute.

In one case a description that gave two boundaries of the land was held to be sufficient. Clement v. Youngman, 40 Pa. 341. Descriptions or amended descriptions can now be filed in actions of ejectment at any time after verdict. Act of March 14, 1872, § 1, P. L. 25.

It would, therefore, be useless for the court to reverse on the ground of an imperfect description of the land in the writ, because a correct description could be filed at any time on return of the case to the lower court, on simple motion.

Besides it is the practice in the supreme court to consider an amendment as made, which is as of course. Jones v. Freyer, 34 Phila. Leg. Int. 282, 3 W. N. C. 365.

The testimony as to the location of the fence was immaterial, however, for there was no testimony that the Gardners were in possession up to it, and even if the Kimes were it was only since 1873—years after Sharps had his deed and had assigned it to Shoemaker. Not the fence, but the true line of the Gardner lot was the dispute, and it alone the material question. Petts. v. Gaw, 15 Pa. 218; Cleaveland v. Flagg, 4 Cush. 81; Sparhawk v. Bagg, 16 Gray, 583; Cornell v. Jackson, 9 Met. 154.

The plain request in defendants' first point was that the court should say to the jury that although Shoemaker owned the land in dispute, still under his deed to Polen he did not convey it to the latter, provided that the jury found that it was at that time in possession of the Kimes.

If Mr. Shoemaker then owned it, the possession of the Kimes. was under him; and the question then was what was Mr. Shoemaker's intention when he made and executed his deed to Polen. Means v. Presbyterian Church, 3 Watts & S. 303; Cox v. Freedley, 33 Pa. 124, 75 Am. Dec. 584; Miner's Appeal, 61 Pa. 283.

The return of the sheriff to the writ is prima facie evidence that parties served were in possession of the land described (Purdon's Digest, 636, pl. 5); and by pleading "not guilty" they admit themselves to be in possession of the whole of the land in dispute, unless they disclaim. Hill v. Hill, 43 Pa. 521.

The construction of the sheriff's deed was for the court and not for the jury (Cox v. Freedley, 33 Pa. 124, 75 Am. Dec. 584); especially as there was no ambiguity in it. Petts v. Gaw, 15 Pa. 218.

It called for a lot of land from Chestnut street to the rear of Gardner's land; and the depth is said to be "255 feet, more or less." These last words are of great force in determining the intent of the sheriff when he made the levy. Coughenour v. Stauft, 77 Pa. 191.

In Hoffman v. Danner, 14 Pa. 25, these words were not used, and in that case the court said: "Where a return is intelligible in itself and ascertains with reasonable precision the particular tract taken in execution, no room is afforded for the introduction of explanatory proof, and none will be received in contradiction of the official act."

More than this it would seem as if they had placed themselves in a position where this court will not review this question at all, as they have not printed in their paper book the writ and levy offered in evidence on which the sale to Sharps was made. See Philadelphia v. Riddle, 25 Pa. 259.

Even if it would have been better for the court to submit the question to the jury instead of declaring the true effect of the evidence, still, the judgment will not be reversed, as the evidence is all one way and the court would surely not have sustained a verdict against it. Eister v. Paul, 54 Pa. 198.

An occupant of land is supposed to occupy in accordance with his legal title, if he has one. McCracken v. Roberts, 19 Pa. 390.

A claim founded on adverse possession must be supported by clear evidence of actual, adverse, visible, notorious, hostile, and continued possession for the full period of twenty-one years. Nearhoff v. Addleman, 31 Pa. 281; Petts v. Gaw, 15 Pa. 218; Huffman v. McCrea, 56 Pa. 99; Groft v. Weakland, 34 Pa. 308.

That there was no error in the court's saying "there is no evidence to submit to you on that point" of adverse possession is plain, for there was none. DeHaven v. Landell, 31 Pa. 120.

A fence will not be taken as a monument unless named in the description. Sparhawk v. Bagg, 16 Gray, 583; Stuven v. Kalchreuter, 8 W. N. C. 44.

It was within the discretion of the court to give such in-

struction as was given; in fact the court might have given binding instruction under all the evidence to find for the plaintiff. McCracken v. Roberts, 19 Pa. 390, and Petts v. Gaw, 15 Pa. 218.

The sheriff's return of service upon both defendants was prima facie proof of their possession of all the land described. Purdon's Digest, 636, pl. 5; Dietrick v. Mateer, 10 Serg. & R. 151.

Subsequently, a general appearance and plea of "not guilty" was entered on part of defendants. This was an admission, as before said, that they were in possession of all the land in dispute. Ulsh v. Strode, 13 Pa. 433; Hill v. Hill, 43 Pa. 521.

The court correctly applied the law, we believe; but even if immaterial errors were made it is not ground for reversal. Galbraith v. Zimmerman, 100 Pa. 374; Lycoming Mut. Ins. Co. v. Sailer, 67 Pa. 108; Bush v. Stowell, 71 Pa. 208, 10 Am. Rep. 694; Hoskinson v. Eliot, 62 Pa. 403.

PER CURIAM:

In the case before us there are some eighteen assignments of error, but not one of them can be sustained. There was no dispute about title on either side since both parties claimed from a common grantor, so that the true and only question was one of lines, and that was fairly left to the jury. The sheriff's deed under which Shoemaker claimed, called for the rear end of the Gardner or Kime lot, and necessarily carried the land conveyed by it to that adjoiner, while the Tripp conveyance limited the defendants' claim to a length westwardly of 150 feet from the middle of Wyoming street.

If, therefore, we were to consult the papers alone, the west line of the defendants' lot and the east line of the plaintiffs' would be readily ascertained by a survey of the defendants' lot. The learned judge, however, thought there was some evidence to go to the jury, and so left it, although we cannot see that it was of such a character as should have changed the prima facie effect of the deeds. There was a good deal of testimony about a fence in the rear of the Kime lot in 1860 or thereabouts; but for what purpose or by whom erected does not appear. Kime claimed up to it in 1873, but before that date we have nothing concerning its purpose.

Evidence of this kind was of little moment either to establish a line, or on which to base title by the statute of limitations.

The judgment is affirmed.